**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| E.E. CRUZ & COMPANY, INC., | : | CIVIL ACTION NO. 06-262 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
| v. | : |  |
| ALUFAB, INC., | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

Defendant, Alufab, Inc. ("Alufab"), moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) to dismiss the claims asserted against it for lack of personal jurisdiction, or in the alternative to transfer the action to the United States District Court for the Southern District of Florida. (Dkt. entry no. 4.) The plaintiff, E.E. Cruz & Company, Inc. ("Cruz"), opposes both parts of Alufab's motion, and cross-moves to transfer the action to the United States District Court for the Southern District of New York. (Dkt. entry no. 11.) The Court, for the reasons stated herein, will (1) deny the part of Alufab's motion seeking dismissal, (2) grant the part of Alufab's motion seeking to transfer the action to the Southern District of Florida, and (3) deny Cruz's cross motion seeking to transfer the action to the Southern District of New York.

**BACKGROUND**

Cruz is a New Jersey corporation that has its principal place of business in Holmdel, New Jersey. (Compl., at 1.) It provides construction-related services. (Id.) Alufab is a Florida corporation that has its principal place of business in Opa Locka, Florida.[1] (Alufab Br., at 1.) Alufab manufactures aluminum railings used in the construction of fences. (Id.)

The New York Department of Environmental Protection ("NYDEP") hired Cruz to be the general contractor on a construction project in Yonkers, New York. (Cruz Br., at 1.) Elliot Rusoff ("Rusoff"), a business associate of Alufab, informed Alufab of the construction project and asked if Alufab was interested in supplying the aluminum railings for the project. (Alufab Br., at 2.)[2] Alufab expressed an interest in the project, and Rusoff contacted Cruz. (Id.; Cruz Br., at 1.) Cruz and Alufab negotiated and entered into a purchase order agreement ("the agreement") on October 6, 2004. (Cruz Br., at

---

[1] Opa Locka, Florida is located in Miami-Dade County. It, therefore, is within the boundaries of the Southern District of Florida. See www.flsd.uscourts.gov.

[2] In its papers, Cruz spells Rusoff two different ways; "Rusoff," and "Russof." (Cruz. Br., at 1, 12.) Alufab spells the same name "Rusoff." (Alufab Br., at 2, 11, 15.) The spelling "Rusoff" occurs more frequently than "Russoff," therefore the Court will consider "Rusoff" the proper spelling.

1.)[3]  Alufab agreed to manufacture aluminum railings to fit the plans and specifications of the New York construction project. (Id.)  The agreement provided that the railings were subject to "inspection, testing, and acceptance" by Cruz and the NYDEP. (Id.)  Furthermore, the agreement stated - without more - that it would be "construed and interpreted in accordance with the laws of the State of New Jersey."  (Adrade Aff., Ex. A., at 4.)

Alufab, as required by the agreement, shipped the railings to the construction site in Yonkers, New York, after they were manufactured in Florida.  (Alufab Br., at 4.)  Cruz rejected the railings upon their arrival.  (Cruz Br., at 1)  Cruz claims that the railings did not conform to the specifications and plans of the construction project.  (Id. at 2.)  Alufab and Cruz were unable to agree on how to remedy the rejection, and Cruz brought an action in this Court on January 19, 2006.  (Id.)  Cruz alleges that Alufab breached the contract between the two parties when it failed to supply railings that conformed to the contract. (Compl., at 2.)  Alufab now seeks to dismiss the complaint, or in the alternative to transfer the action to the Southern District

---

[3] Cruz does not elaborate on the extent of the negotiations that took place.  Alufab, however, asserts that Alufab's Senior Vice President and a representative from Cruz spoke on the phone four times between July 2004 and October 2004.  (Alufab Br., at 2.)  The total amount of time spent on the four phone calls was less than an hour.  (Id. at 3.)

of Florida.  Cruz opposes dismissal, and argues that if the action is transferred it should be transferred to the Southern District of New York.

### DISCUSSION

Alufab argues (1) the complaint should be dismissed because the Court cannot exercise personal jurisdiction over Alufab, or (2) in the alternative that the action should be transferred to the Southern District of Florida because the alleged breach of contract occurred in Florida.  (Alufab Br., at 1-12, 19.)  Cruz argues that this Court can exercise personal jurisdiction over Alufab because Alufab (1) initiated contact with Cruz, (2) conducted telephone conversations with Cruz, (3) entered into a contract that was to be construed and interpreted pursuant to New Jersey law, and (4) knew Cruz was a New Jersey resident.  (Cruz Br., at 8.)  In the alternative, Cruz argues that the action, if not properly brought in the District of New Jersey, should be transferred to the Southern District of New York because the alleged non-conforming materials were (1) manufactured for a construction project in New York, (2) shipped to New York, and (3) rejected by an engineer in New York.  (Id. at 12.)

**I.   Motion to Dismiss for Lack of Personal Jurisdiction**

   **A. Personal Jurisdiction Requires Minimum Contacts**

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits. New Jersey's long-arm statute, N.J.R. 4:4-4, has been interpreted to permit jurisdiction over a non-resident defendant to extend as far as is constitutionally permissible. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981); see Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971). The Due Process Clause of the Fourteenth Amendment prevents a court from asserting personal jurisdiction over a defendant who does not have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436-37 (3d Cir. 1987) (alteration in original) (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 320 (1945)).

The contacts must result from the defendant's purposeful conduct with the forum such that the defendant "should reasonably anticipate being haled into court" in the forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of

5

conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe, 326 U.S. at 319).  The purposeful availment requirement thus ensures that a defendant will not be haled into court solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The plaintiff bears the burden of demonstrating sufficient contacts with the forum to justify the exercise of jurisdiction when a defendant raises the absence of personal jurisdiction.  See, e.g., N. Penn Gas Co. v. Corning Nat. Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990) (citations omitted).  A plaintiff may meet this burden by establishing that a court has either "general" or "specific" jurisdiction.  Provident Nat'l Bank, 819 F.2d at 437.  The plaintiff need only make a prima facie demonstration of jurisdiction by establishing with sufficient particularity the presence of contacts between the defendant and the forum.  See, e.g., Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  A court, in examining whether the plaintiff has satisfied this prima facie

burden, must resolve all disputes of material fact in favor of the non-moving plaintiff.  See, e.g., Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted).

### 1. General Jurisdiction

General jurisdiction exists when the defendant has contacts with a forum that are unrelated to the events forming the basis of the cause of action.  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  Provident Nat'l Bank, 819 F.2d at 437; Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F.Supp. 1195, 1209 (D.N.J. 1993).  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "'continuous and systematic' contacts with the forum state" such that the defendant should expect to be haled into court on any cause of action.  Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414-16 & 414 n.9 (1984) (emphasis added); Provident Nat'l Bank, 819 F.2d at 437.  The facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982); Decker v. Circus Circus Hotel, 49 F.Supp.2d 743, 747 (D.N.J. 1999).

### 2. Specific Jurisdiction

Specific jurisdiction over the defendant exists when the claim is directly related to or arises out of the defendant's activities with the forum. Burger King Corp., 471 U.S. at 472; Dollar Sav. Bank v. First Sec. Bank, 746 F.2d 208, 211 (3d Cir. 1984). The activities must rise to the level of minimum contacts with the forum. Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J. 1996). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp., 471 U.S. at 472. The defendant must have "'purposefully directed'" his activities at residents of the forum." Id. at 473 (quoting Helicopteros Nacionales de Colom. S.A., 446 U.S. at 414).

### B. Minimum Contacts and A Non-Resident Seller

Courts distinguish between non-resident sellers and non-resident purchasers when evaluating minimum contacts for purposes of personal jurisdiction. Minimum contacts sufficient to exercise personal jurisdiction over a non-resident seller exist when the seller delivers its products into the stream of commerce with the expectation that its products will be bought by consumers in the forum state. World-Wide Volkswagen Corp., 444 U.S. at 297-98.

A contract between a resident and a non-resident, alone does not automatically establish sufficient minimum contacts to exercise jurisdiction over the non-resident. Burger King Corp., 471 U.S. at 478. Informational communications in furtherance of a contract are also insufficient to establish the requisite minimum contacts. BP Chem. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.2d 254, 260 (3d Cir. 2000). A court should consider prior negotiations between the parties, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing to determine if a defendant has minimum contacts with a forum. Id.

**C. Alufab's Contacts with New Jersey**

This Court cannot exercise personal jurisdiction over Alufab because Alufab does not have sufficient contacts with New Jersey. General jurisdiction over Alufab does not exist because Alufab has no continuous and systematic contacts with New Jersey. Alufab is incorporated under the laws of, and has its principal place of business and corporate headquarters in Florida. (Compl., at 1; Alufab Br., at 1.) Alufab has not performed work in New Jersey, and does not regularly do business with any companies or persons in New Jersey. (Andrade Aff., at

2-3.)[4]  Alufab holds no property, has no offices, and has not assigned an employee to work in New Jersey.  (Id. at 2.)  No Alufab employees have traveled to New Jersey in connection with its agreement with Cruz, or any other transaction.  (Id. at 3-4.)

Cruz argues that this Court can exercise specific jurisdiction over Alufab because Alufab "purposely directed its activities to New Jersey."  (Cruz Br., at 10.)  It argues that Alufab initiated the contact with Cruz through Rusoff, and emphasizes the "numerous telephone conversations" that took place with Cruz in New Jersey.  (Id. at 8.)  Cruz contends Alufab knew Cruz was a New Jersey resident and that the agreement provided that it was governed by New Jersey law.  (Id.)  These actions, contrary to Cruz's assertions, however, have no meaningful connection to New Jersey to justify the exercise of jurisdiction over Alufab.

Alufab had not negotiated with Cruz before the transaction at issue here.  (Andrade Aff., at 3.)  Its decision to contract with Cruz, a New Jersey corporation, in connection with the NYDEP project is not sufficient to establish minimum contacts with New Jersey.  Alufab's use of interstate mail and telephone

---

[4] Alufab asserts that it has only engaged in one other business transaction with a New Jersey company in or about 1998/1999.  (Andrade Aff., at 3.)  No Alufab employees traveled to New Jersey in relation to the transaction.  (Id.)

service to negotiate the agreement with Cruz also does not qualify as sufficient contacts to confer jurisdiction. See Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc., 597 F.2d 596, 603-04 (7th Cir. 1979). While Alufab admits that four phone calls between Cruz and Alufab took place, the phone calls were not so numerous, continuous, or substantial to justify the exercise of this Court's jurisdiction. See Baron & Co. v. Bank of N.J., 497 F.Supp. 534, 538 (E.D. Pa. 1980).

Neither Alufab's products, nor its employees are physically present in New Jersey. Alufab employees did travel to the construction site in New York to take measurements prior to manufacturing the railings, but they did not come to New Jersey. They did not even fly into New Jersey. (Cruz Br., at 12; Alufab Br., at 3.) The alleged non-conforming railings were manufactured in Florida and shipped directly to the construction site in Yonkers, New York. (Andrade Aff., at 4.) The rejection of the railings occurred in New York. The railings were not delivered into the stream of commerce with the expectation that they would be sent to, bought, or used in New Jersey. No future consequences would occur in New Jersey. Any future consequences regarding the railings would be felt in New York, where the railings were delivered, and intended to be used. (Id.) "The mere presence of a choice of law provision in a contract is not sufficient to vest jurisdiction in a court." Baron & Co., 497

11

F.Supp. at 538.  As in BP Chemicals, "[b]esides the contracts and implementing correspondence, there are no significant contacts" with New Jersey in this action.  BP Chem. Ltd., 229 F.3d at 254.

Alufab did not purposefully direct its actions at residents of New Jersey and its actions have not created a substantial connection with New Jersey such that the exercise of jurisdiction over it would satisfy "traditional notions of fair play and substantial justice."  Int'l Shoe Co, 326 U.S. at 320.  This Court, therefore, cannot exercise personal jurisdiction over Alufab.

**II.   Alufab's Alternative Motion to Transfer**

Alufab argues in the alternative that the action should be transferred to the Southern District of Florida if the part of the motion seeking dismissal is denied.  (Alufab Br., at 17.)  Cruz opposes transfer, but argues that if the Court is inclined to transfer the action it should be transferred to the Southern District of New York.  (Cruz Br., at 12.)

**A. Transfer Standard**

Two statutes are relevant to the transfer of this action.  28 U.S.C. Section 1631 provides:

> Whenever a civil action is filed in a court . . . and
> that court finds that there is a want of jurisdiction,
> the court shall, if it is in the interest of justice,
> transfer such action or appeal to any other such court
> in which the action or appeal could have been brought.

28 U.S.C. § 1361. 28 U.S.C. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C § 1404(a).

An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties. Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). In a civil action based on jurisdiction under Section 1332, venue can be placed in (1) any district where any defendant resides, (2) a district in which a substantial part of the events or omissions giving rise to the claims occurred, or (3) a district in which the defendants are subject to personal jurisdiction at the time the action is commenced if there is no other district where the action can be brought. 28 U.S.C. § 1391.

To determine where a substantial part of the claim arose, a court should evaluate the location of the events and omissions that give rise to the claim, not a defendant's contacts with a particular district. Cottman Transmission Sys. Inc. v. Martino, 36 F.3d 291, 294 (3d Cir 1994); Norben Import Corp. v. Metro. Plant & Flower Corp., No. 05-54, 2005 WL 1677479, at *10 (D.N.J. July 15, 2005). A claim for breach of contract arises at the

place of performance of the contract. Thorlabs Inc., v. Townsend Commc'ns, L.L.C., No. 03-4550, 2004 WL 1630488, at *4 (D.N.J. June 30, 2004) (noting that the breach of contract occurred where the alleged non-conforming goods were manufactured, not their place of destination). The fact that a plaintiff may suffer damages in another forum does not mean that a claim arises in that forum. (Id.)

The moving party, on a motion to transfer, must show that the alternative forum is more appropriate than the present one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Courts balance various private and public interests when deciding whether to transfer pursuant to § 1404(a). Jumara, 55 F.3d at 879. Such private interests may include plaintiff's choice of forum; the ease of access to sources of proof; availability of compulsory process over unwilling witnesses; the cost of attendance of willing witnesses; the possibility of a jury view of the premises; the location of books and records to the extent they may be unavailable in one fora; and whether the claim arose elsewhere. See Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1946); Jumara, 55 F.3d at 879. The public interests may include enforceability of the judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty in the two fora resulting from court congestion; local interest in deciding local controversies at

home; public policies of the fora; and familiarity of the trial judge with the applicable state law. Jumara, 55 F.3d at 879-80. The burden is on the defendant to establish the need for transfer. Id. at 879. In general, the plaintiff's choice of forum should not be lightly disturbed. Id.

**B. Transfer as Applied to this Case**

Transfer of this action to the Southern District of Florida is appropriate. New Jersey's connection to the action is remote. First, placing venue in Florida is proper because the alleged breach that gives rise to Cruz's claim occurred in Florida. (Andrade Aff., at 4.) Second, the Southern District of Florida, unlike the District of New Jersey, can exercise jurisdiction over Alufab because Alufab is a resident of, and conducts business in Florida. (Id. at 2.)[5]

Florida, not New Jersey or New York, is the relevant place of performance of the contract between Cruz and Alufab. Any failure of Alufab to comply with the agreed upon specifications for the railings occurred in Florida where the railings were made, not in New Jersey where Cruz is located, and not in New York where the railings were sent. While the contract required Alufab to deliver the railings to New York, New York is not the

---

[5] The Court acknowledges that the Southern District of New York would also likely be able to exercise jurisdiction over Alufab. However, for the reasons listed, infra, venue in the Southern District of Florida is proper and transfer to Florida is appropriate.

place of performance because Alufab is not alleged to have breached that part of the agreement.  (See Compl.)

Private and public interest factors favor transfer.  A substantial part of the claim arose in Florida, and documents related to the railings are in Florida.  (Alufab Br., at 9-10.)  Transfer is also in the interest of justice since this Court lacks jurisdiction over Alufab.

Alufab also asserts that witnesses to the manufacture of the railing are in Florida.  Cruz asserts, however, that "all of the third-party witnesses who will be called to testify in this matter are located in the State of New York."  (Cruz Br., at 13.)  The location of witnesses, therefore, neither weighs in favor of, nor against transfer to the Southern District of Florida because one party's witnesses will have to travel regardless of where the action is heard.

The plaintiff's choice of forum ordinarily is given deference, but it deserves less weight here because the operative events occurred elsewhere.  LG Elecs. v. 1st Int'l Computer, Inc., 138 F.Supp.2d 574, 590 (D.N.J. 2001) ("when the central facts of the lawsuit occur outside the forum state, a plaintiff's choice of forum is entitled to less deference"); Finkelstein v. Simms, No. 96-6864 1997 WL 288610, at *5 (E.D. Pa. May 21, 1997); Edwards v. Texaco Inc., 702 F.Supp. 101, 103 (E.D. Pa. 1988).  As detailed, supra, the operative events in this action did not

occur in New Jersey. Similarly, the operative events did not occur in New York either. While the railings were delivered to a construction site in New York, the alleged breach of contract occurred in Florida where the railings were made contrary to the specifications of the contract. (Cruz Br., at 12-13; Alufab Br., at 3.)

Cruz neither provides case law to support its argument that the action should be transferred to the Southern District of New York, nor addresses or distinguishes the Thorlabs case cited by Alufab in support of its motion to transfer the action to the Southern District of Florida. (See Alufab Br., at 18-19; Mem. Op., supra, at 13.)[6] Cruz merely (1) cites 28 U.S.C. § 1391(a) that provides that an action can be transferred to a district where a substantial part of the events or omissions giving rise to the claim took place, and (2) restates the facts relating to New York. (Cruz Br., at 12-13.) It does not, however, explain how a substantial part of the events or omissions giving rise to

---

[6] The Thorlabs case is analogous to the present action. In Thorlabs a New Jersey corporation sued, inter alia, Narrowgate, a Texas corporation, in the District of New Jersey for breach of contract. Narrowgate had been retained to perform the binding services for Thorlabs's catalog. The binding was done in Texas, and the catalogs were sent to New Jersey, where they fell apart due to alleged defective binding by Narrowgate. Narrowgate sought to dismiss the complaint for lack of personal jurisdiction. The District of New Jersey did not dismiss the action, but transferred it to Texas, holding that the claim arose in Texas, where the alleged defective bindings were made, not in the "fortuitous destination of the finished catalogs [New Jersey]." Thorlabs Inc., No. 03-4550, 2004 WL 1630488, at *4.

the claim took place in New York, particularly in light of Thorlabs.

While Cruz points out that the agreement contains a choice-of-law clause indicating that it should be interpreted in accordance with the laws of New Jersey, absent from the agreement is a clause providing for venue in New Jersey, New York, or any particular state or district for that matter.  (Andrade Aff., Ex. A.)  The purchase order and accompanying terms and conditions, which together constitute the agreement between Cruz and Alufab (1) is written on Cruz letterhead, (2) "was executed by E.E. Cruz in New Jersey," and (3) was mailed to Alufab in Florida to sign.  (Cruz Br., at 8; Alufab Br., at 3.)  It appears, therefore, that the burden to include a choice-of-venue clause ensuring that the litigation of any claims regarding the agreement took place in New Jersey was on Cruz.

Based on the operative facts and law, neither of Cruz's venue choices are entitled to deference.  New Jersey may have an interest in protecting New Jersey companies, but the fact that Cruz has suffered damages does not mean that venue in New Jersey is proper.  Balancing the various factors, the Court finds that

the Southern District of Florida is a more appropriate forum than the present forum.[7]

## CONCLUSION

The Court, for the reasons stated supra, will deny the part of Alufab's motion seeking dismissal, but grant the part of the motion seeking transfer of the action to the Southern District of Florida. The Court will deny Cruz's cross motion to transfer the action to the Southern District of New York. An appropriate order will be issued.

                                        s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

---

[7] Transfer to the Southern District of Florida does not void or alter the effect of the agreement's New Jersey choice-of-law provision. The Southern District of Florida, and the Eleventh Circuit are experienced in interpreting and applying New Jersey contract law. See, e.g., Bakrac Inc. v. Villager Franchise Sys. Inc., 164 Fed. Appx. 820 (11th Cir. 2006) (affirming the judgment of the Southern District of Florida and applying New Jersey law); Citi-Lease Co. v. Entm't Fam. Style, Inc., 825 F.2d 1497 (11th Cir. 1987) (affirming the Southern District of Florida's judgment and applying New Jersey law to determine whether a contract gave rise to a lease or security interest); Amer. Cyanamid Co. v. Miss. Chem. Co., 817 F.2d 91 (11th Cir. 1987) (applying New Jersey law to breach of contract action); Connell Leasing Co. v. JF Eqs. Acqs., Inc., 731 F.Supp. 1539 (S.D. Fla. 1989) (applying New Jersey law to construction of an aircraft agreement).